**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF MISSISSIPPI**
**JACKSON DIVISION**

**BERNICE R.  HOLMES**                                                    **PLAINTIFF**

**V.**                                        **CIVIL ACTION NO.  3:10CV523 CWR-LRA**

**MICHAEL J.  ASTRUE,**
**COMMISSIONER OF SOCIAL SECURITY**                        **DEFENDANT**

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

Bernice Holmes has filed a motion for summary judgment appealing the

final decision denying her applications for Disability Insurance Benefits ("DIB") and

Supplemental Security Income ("SSI").  The Commissioner opposes the motion and

requests an order pursuant to 42 U.S.C. § 405(g), affirming the final decision of the

Administrative Law Judge.  Having carefully considered the hearing transcript, the

medical records in evidence, and all the applicable law, the undersigned recommends that

the decision be affirmed.

**Procedural Background**

On August 28, 2007, Plaintiff filed applications for DIB and SSI, alleging he

became disabled on April 20, 2007.  The applications were denied initially and on

reconsideration.  She appealed the denial and on November 24, 2009, Administrative Law

Judge Todd Spangler ("ALJ") rendered an unfavorable decision finding that Plaintiff had

not established a disability within the meaning of the Social Security Act.  The Appeals

Council denied Plaintiff's request for review on July 19, 2010.  She now appeals that

decision.

**Facts and Medical Evidence**

Plaintiff has not worked since presenting to the emergency room with complaints

of chest pain in April 2007.  Cardiac testing yielded normal results, and when she

returned a couple of months later with the same complaints, she was diagnosed with chest

pain of an unknown etiology, hypertension, and obesity.  She alleges disability, however,

due to arthritis in her knees, lower back pain, sociophobia, and osteoarthritis.[1]

In December 2007, Plaintiff underwent a consultative examination by Dr. John A.

Frenz for an evaluation of her back pain.  She was noted to be obese, but "no palpable

masses, fluid levels, hernia or indications of tenderness" were otherwise noted.  Her

posture, curvatures, stance, and range of motion were all normal and despite her reports

of pain, Dr. Frenz noted that:

> She is able to dress and feed herself, can stand for forty minutes, can walk
> for 40 minutes, can sit indefinitely, can lift about twenty pounds, does not
> drive a car.  Around the house participates in sweeping, mopping,
> shopping, cooking, dishwashing, and goes up and down steps.[2]

Dr. Frenz's clinical diagnosis was that Plaintiff suffered from chronic low backache due

to low back strain from untreated obesity, and mild to minimal arthritis of the knees

"presently asymptomatic."  X-rays taken that same month of Plaintiff's right knee

indicated mild changes of osteoarthritis, but no osseous, articular, or soft tissue

abnormality.  X-rays of her lumbar spine were also unremarkable — the alignment was

---

[1]ECF No. 13-7, pp. 12-14, 25-27; ECF No.13-6, p. 7;  ECF No. 13-3, p.5.

[2]ECF No. 13-7, p. 38.

2

normal, disc spaces were well-maintained, and there was no evidence of

spondylolisthesis or spondylolysis, or significant degenerative disc disease.[3]

Emergency room records reflect that Plaintiff was also treated for a mild knee

injury in January 2008.  A physical examination revealed moderate tenderness, soft tissue

swelling, and palpable effusion, but x-rays confirmed no acute fracture or dislocation.

Emergency-room physicians diagnosed Plaintiff with a right knee ligament sprain; she

was discharged in stable condition with crutches and a prescription for Lortab.  In the

following weeks, she was treated by Rankin Orthopedic Specialists for continued

complaints of right knee pain.  She was diagnosed with mild degenerative joint disease of

the right knee and prescribed anti-inflammatory medications.  When she returned for a

follow-up in March 2008, she reported that anti-inflammatories helped alleviate the pain,

but she was "feeling a catch in the medial joint of the right knee."  She was tender to

palpation but denied instability.  MRI results indicated joint effusion with a degenerative

pattern, but no significant or acute abnormality.  When Plaintiff returned for a follow-up

in April 2008, with reports of a grinding sensation in the knee, a second MRI indicated

small effusion with osteoarthritic changes, but was otherwise negative.  Plaintiff was

offered a steroid injection to treat the pain but she refused, opting instead to continue

with her oral medications.  She was advised, however, that a steroid injection would be

---

[3]ECF No. 13-7, p. 42-43.

necessary if she continued to experience pain.[4]

In May 2008, Dr. Thomas Jeffcoat conducted a consultative physical examination. He found that Plaintiff did not meet or equal any listing or suffer from a severe physical impairment.  He noted that while her BMI was 38.5, her examination had produced only normal findings, and her x-rays had revealed only mild degenerative joint disease in her right knee and no spinal abnormalities.[5]  He did not complete a medical source statement. The only other treatment of record for Plaintiff's physical impairments after Dr. Jeffcoat's consultative examination was in August 2008, and at that time, Plaintiff had no complaints of pain or other symptoms.

Plaintiff also sought treatment at Region 8 Mental Health Center in May 2008 for complaints of depression, anxiety, claustrophobia, insomnia, feelings of worthlessness, and panic attacks, dating back six months.  She was diagnosed with depression and anxiety, secondary to alcohol dependence, and treated with medication and therapy.  In subsequent visits from July 2008 to June 2009, treatment notes indicate that her mental examinations were unremarkable and she was doing well on medication.[6]  A consultative mental examination conducted by State Agency Consultant, Dr. Joseph Dunn, in June 2008, confirmed the anxiety and depression diagnoses.  His report also indicated no

---

[4]ECF No. 13-7, pp. 45-54.

[5]ECF No. 13-7, p. 69.

[6]ECF No. 13-7, pp. 97-101.

4

significant functional limitations.  Plaintiff could follow simple instructions, manage funds, perform routine repetitive tasks and carry out daily activities.[7]  Two weeks later, Dr. Sylvester McDonnieal conducted a psychiatric review that confirmed Plaintiff did not suffer from a severe mental impairment.  He found no evidence of functional limitations in activities of daily living, maintaining social functioning, or in maintaining concentration, persistence, or pace, and insufficient evidence of episodes of decompensation of extended duration.[8]  The only contradiction of record is a medical opinion issued by a nurse practitioner, who opined that Plaintiff has poor to no ability to interact appropriately with the general public and to travel to unfamiliar places.  He also opined that mental limitations would interfere with her ability to interact with co-workers and the general public, and would cause her to be absent from work more than three times a month.  He did note that she has a good to fair ability in all other areas, and could follow basic instructions.[9]

## Administrative Hearing Testimony

 Plaintiff testified that she is claustrophobic and feels anxious in large crowds, has "trouble getting along with others," and rarely leaves her home.  She also feels depressed

---

[7]ECF No. 13-7, pp. 71-73.

[8]ECF No. 13-7, pp. 75-88.

[9]ECF No. 13-7, pp. 90-92.  A nurse practitioner is not an "acceptable medical source" entitled to the same weight as a psychologist's or psychiatrist's opinion.  *Compare* 20 C.F.R. § 416.913 (d)(1), 20 C.F.R. § § 416.927 (a)(2), (a)(3).

and confused sometimes and has trouble remembering things such as birthdays. She has a General Educational Development Certificate ("G.E.D.") and has previously worked as a housekeeper. She also has three children, the youngest of which is six years old. She testified that approximately twice a month, she will not bathe or change clothes because she feels depressed; often sends her grandmother or mother shopping to avoid the crowds; and sometimes goes to church.

As for her physical impairments, Plaintiff rated her back and knee pain at a 10 on a scale of 1 to 10, but described her back pain as the worst. In his opening statement, counsel acknowledged that there was little objective evidence of Plaintiff's chronic back pain, but pointed to objective evidence establishing that she was overweight. He also suggested that she was limited to sedentary work. Plaintiff also testified that she has difficulty if she stands for longer than 30 minutes, walks long distances, climbs stairs, bends, stoops or squats. She acknowledged that physicians had recommended steroid injections for her knee pain, but she had refused because she was scared of needles. She prefers oral medication which alleviates both her back and knee pain.[10]

### Findings of the Administrative Law Judge

After reviewing the evidence, the ALJ concluded that Plaintiff was not disabled

---

[10]ECF No. 13-2, pp. 35-53.

under the Social Security Act.  At step one of the five-step sequential evaluation,[11] the

ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged

onset date, April 20, 2007.  At step two, he found that Plaintiff's obesity, chronic low

back strain, and depression were severe.  At step three, the ALJ noted that Plaintiff has

mild restrictions in daily activities, moderate difficulties in social functioning, and mild

difficulties in concentration, persistence and pace, but he found that none of her

impairments met or medically equaled any listing.  At step four, the ALJ found that

Plaintiff could not return to her past relevant work as a housekeeper, but has the residual

functional capacity to perform light work, except she can "never climb ladders/ropes/

scaffolds and can occasionally climb ramps/stairs, stoop, crawl, balance, and bend."[12]

The ALJ concluded at step five, that given Plaintiff's age, education, work experience,

and residual functional capacity, she could work as photocopy machine operator and

sewing machine operator, neither of which require any interaction with the public.

**Standard of Review**

Judicial review in social security appeals is limited to two basic inquiries: "(1)

---

[11]Under C.F.R. § 404.1520, the steps of the sequential evaluation are: (1) Is plaintiff engaged in substantial gainful activity? (2) Does plaintiff have a severe impairment? (3) Does plaintiff's impairment(s) (or combination thereof) meet or equal an impairment listed in 20 C.F.R. Part 404, Sub-part P, Appendix 1? (4) Can plaintiff return to prior relevant work? (5) Is there any work in the national economy that plaintiff can perform? *See also McQueen v. Apfel*, 168 F.3d 152,154 (5th Cir. 1999).

[12]ECF No. 13-2, p. 23.

whether there is substantial evidence in the record to support the [ALJ's] decision; and (2)

whether the decision comports with relevant legal standards." *Brock v. Chater*, 84 F.3d

726, 728 (5th Cir. 1996) (citing *Carrier v. Sullivan*, 944 F.2d 243, 245 (5th Cir. 1991)).

Evidence is substantial if it is "relevant and sufficient for a reasonable mind to accept as

adequate to support a conclusion; it must be more than a scintilla, but it need not be a

preponderance." *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995) (quoting *Anthony v.

Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992)).  This Court may not re-weigh the evidence,

try the case *de novo*, or substitute its judgment for that of the ALJ, even if it finds

evidence that preponderates against the ALJ's decision.  *Bowling v. Shalala*, 36 F.3d 431,

434 (5th Cir. 1994).

### Discussion

Plaintiff alleges that the ALJ's residual functional capacity assessment is not

supported by substantial evidence because the mental limitations do not reflect those

found at step three, and the physical limitations are not directly based upon any medical

opinion.  As set forth further below, the ALJ's residual functional capacity assessment is

consistent with the record as a whole and his step-five finding is well supported.

Plaintiff first contends that the ALJ failed to present a hypothetical to the

vocational expert that included his step-three finding that she has moderate limitations in

social functioning.  Although state agency physicians, Dr. Dunn and Dr. McDonnieal,

found no evidence that Plaintiff has functional limitations in activities of daily living,

maintaining social functioning, or in maintaining concentration, persistence or pace, the

ALJ apparently credited Plaintiff's testimony that she feels anxious in large crowds,

suffers from claustrophobia, and has trouble getting along with others.  To that end, in the

first of five hypotheticals posed at the administrative hearing, the ALJ asked the

vocational expert to assume the following:

> Assume she'd be limited to a range of light exertion.  No ladders, ropes, and
> scaffolds.  No more than occasional ramps and stairs.  No more than
> occasional stooping, crouching, balancing, bending.  Further assume she
> would be limited to one, simple one, two, three step instructions.  **No more
> than occasional contact with co-workers, supervisors, and the public.**
> Given these limitations could the claimant perform her past work either as
> actually performed or as performed in the national, local economy.[13]

(Emphasis added).  In response, the vocational expert testified that while Plaintiff could

not return to her past work as a housekeeper, she could perform light unskilled work as a

photocopy machine operator and sewing machine operator.[14]  Without citing any

authority in support, Plaintiff submits that the hypothetical's limitation to "no more than

occasional contact with co-workers, supervisors, and the public" is insufficient to account

for her moderate limitations in social functioning, specifically her "trouble getting along

with others."  She fails to cite any objective evidence or medical source that restricts her

to less than occasional interaction with co-workers, supervisors, or the public.  In

subsequent hypotheticals, when asked to assume further that Plaintiff had poor to no

ability to interact with the general public, the vocational expert testified that she would

---

[13]ECF No. 13-2, p. 55.

[14]ECF No. 13-2, pp. 55-57.

still be able to perform either occupation because neither requires public interaction.  The

ALJ's finding that she retains the mental residual functional capacity to perform light

unskilled work, despite her limitation to no more than occasional contact with others, is

supported by treatment records from Region 8 Health Center, Dr. Dunn's consultative

examination, and Dr. McDonnieal's psychiatric review.  Plaintiff presents no contrary

evidence on appeal.

Without abandoning her claim that the hypothetical's limitation to "no more than

occasional contact" was inadequate, Plaintiff also argues that the ALJ erred by failing to

include this limitation in his written residual functional capacity assessment.  The

Commissioner concedes that the ALJ's residual functional capacity assessment, as

written, reflects only her physical limitations.  The ALJ writes:

> After careful consideration of the entire record, the undersigned finds that
> the claimant has the residual functional capacity to perform light work as
> defined in 20 C.F.R. 404.1567(b) and 416.967(b) except the claimant can
> never climb ladders/ropes/scaffolds and can only occasionally climb
> ramps/stairs, stoop, crawl, balance and bend.[15]

The Court finds the apparent oversight harmless.  As noted above, the ALJ accounted for

Plaintiff's moderate limitations in social functioning in his hypothetical to the vocational

expert, who testified that she could perform work as photocopy machine operator and

sewing machine operator – the same jobs the ALJ ultimately derived at step five.  Thus,

the ALJ's oversight in failing to include the limitation as part of his written residual

---

[15]ECF No. 13-2, p. 23.

functional capacity determination was also harmless.  To hold otherwise, would be to require procedural perfection.  "No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result." *Fisher v. Bowen,* 869 F.2d 1055, 1057 (7th Cir. 1989).  *See Mays v. Bowen,* 837 F.2d 1362, 1364 (5th Cir. 1988).

Social security errors warrant reversal and remand only if the plaintiff affirmatively demonstrates prejudice or harm.  *Hall v. Schwieker*, 660 F.2d 116, 119 (5th Cir. 1981) (citing *Pacific Molasses Co. v. F.T.C.*, 356 F.2d 386 (5th Cir. 1966)); *Morton v. Ruiz*, 415 U.S. 199 (1974).  Prejudice is established by showing that additional evidence could have been produced that "might have led to a different decision."  *Newton v. Apfel*, 209 F.3d 448, 458 (5th Cir. 2000) (citing *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995)).  An error is harmless if there is no "realistic possibility that, absent the error" the result would have been different.  *January v. Astrue*, 400 F.App'x 929, 932 (5th Cir. 2010).  Plaintiff has demonstrated neither here.

In her final assignment of error, Plaintiff alleges the ALJ improperly assessed her physical limitations "on his own."  She contends that the ALJ's finding that she retains the residual functional capacity to perform the full range of light work, with some exceptions, is unsupported because the record lacks a "medical opinion" on her physical ability to perform work-related activities.

The ALJ found Plaintiff's chronic low back pain and obesity were severe

impairments and he expressly indicates that his residual functional capacity finding is supported by Dr. Frenz's consultative examination, her treatment records, the x-ray of her lumbrosacral spine, and State agency opinions, including Dr. Jeffcoat's consultative review of her physical residual functional capacity.[16]  The ALJ noted that Dr. Jeffcoat found Plaintiff's physical impairments were not severe, that her consultative examination and x-rays were normal, and her body mass index was 38.5.  He also noted that Dr. Frenz made similar observations concerning her obesity and body mass index, specifically that she "suffered from chronic low backache due to low back strain, obesity, and mild to moderate arthritis of the knees (presently asymptomatic)."[17]

Plaintiff submits that the ALJ erred in finding that her obesity and chronic back pain were severe because Dr. Jeffcoat found her impairments were "not severe."[18]  The record shows Plaintiff alleged disability due to lower back pain in her application for benefits; counsel cited obesity as "objective evidence" of such in his opening statement at the administrative hearing; Dr. Frenz's clinical diagnosis was chronic back pain due to untreated obesity; and Plaintiff testified that chronic back pain was her worst physical

---

[16]ECF No. 13-2, p. 25.

[17]ECF No. 13-2, p. 24.

[18]ECF No. 13-7, p. 69.

impairment.[19]  It is true that no treating or examining source found her obesity and

chronic back pain were severe.  Nor does the record contain a medical source statement –

an opinion from a treating or examining source assessing her physical functional

limitations, i.e.,  what activities she can do despite her physical impairments.  20 C.F.R. §

404.1513(b)(6) 1994.  See *Williams v. Astrue*, 355 F.App'x 828 (5th Cir.  2009) ("[T]he

ALJ  impermissibly relied on his own medical opinions as to the limitations presented by

"mild to moderate stenosis and 'postures spurring' to develop his factual finding.").

While an ALJ should typically request a medical source statement, the Fifth Circuit has

held that the absence of such a statement does not, in and of itself, render the record

incomplete.  *Ripley*, 67 F.3d at 557.  Instead, the critical issue is whether substantial

evidence supports the ALJ's determination.

    As Plaintiff has pointed out, no treating or examining source found that her

physical impairments produced any functional limitations and yet, the ALJ assessed

certain climbing and bending limitations.  In assessing these limitations, the ALJ appears

to have again credited her subjective complaints and hearing testimony.  At the

administrative hearing, Plaintiff testified that she has difficulty climbing a flight of stairs,

and has knee pain if she stands for longer than 30 minutes, walks long distances, bends,

---

[19]ECF No. 13-2, p. 50.  Social Security Ruling 02-1p also provides that obesity can cause
physical functional limitations with regard to "sitting, standing, walking, lifting, carrying,
pushing, pulling, climbing, balancing, stooping, crouching, manipulating, as well as the ability to
tolerate extreme heat, humidity, or hazards."  SSR 02-1p.

or stoops.[20]  Though Plaintiff submits that she is therefore limited to sedentary work, the

ALJ found "no treating source or objective evidence to support this argument."  Rather,

Plaintiff told Dr. Frenz that she could stand and walk for 40 minutes, lift 20 pounds,

perform household chores, and go up and down stairs.  She also acknowledged that her

medications alleviate her pain.  Thus, the ALJ found that her statements concerning the

intensity, persistence, and limiting effects of her pain were not entirely credible.

Whenever statements about the intensity, persistence or limiting effects of symptoms are

not substantiated by objective medical evidence, the ALJ has the discretion to make a

finding on the credibility of the statements and the determination is entitled to

considerable deference.  *Foster v. Astrue*, 277 F.App'x 462 (5th Cir. 2008).  In addition to

Plaintiff's testimony, the medical evidence reflects an improvement in her conditions, not

further degeneration.  In fact, in her only physical examination of record after Dr.

Jeffcoat's consultative examination, Plaintiff denied feeling any pain or other symptoms.

 Even if the Court assumed that the ALJ erred in failing to obtain a medical source

statement, Plaintiff has neither argued nor demonstrated prejudice.  She has not shown

that had the ALJ obtained a medical source statement, it would have produced additional

evidence that might have led to a different result.  *See Ripley*, 67 F.3d at 557, n.22)

("Prejudice can be established by showing that additional evidence would have been

---

[20]ECF No. 13-2, pp. 43-44.

produced if the ALJ had fully developed the record, and that the additional evidence might have led to a different decision."). Nor has she shown that the failure to obtain a medical source statement affected her substantial rights. *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1998). This Court will not reverse a procedurally imperfect administrative ruling unless the substantive rights of a party have been prejudiced.

The sole responsibility for determining a claimant's residual functional capacity rests with the ALJ. 20 C.F.R. § 404.1546(c) (2009). Based upon consideration of the evidentiary record as a whole, the ALJ determined that Plaintiff failed to establish that her impairments were of sufficient severity to be disabling. The undersigned's review of the record compels a finding that the ALJ applied the correct legal standards and that substantial evidence supports the ALJ's decision.

Conclusion

For all the above reasons, it is the opinion of the undersigned United States Magistrate Judge that Plaintiff's Motion to Remand should be denied; that Defendant's Motion to Affirm the Commissioner's Decision be granted; that Plaintiff's appeal be dismissed with prejudice; and, that Final Judgment in favor of the Commissioner be entered.

The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendation contained within this report and recommendation within 14 days after being served with a copy shall bar that party, except

15

upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual

findings and legal conclusions accepted by the district court.  28 U.S.C. § 636, Fed. R.

Civ. P. 72(b) (as amended, effective December 1, 2009).

      This the 10th day of February 2012.

                                    /s/ Linda R. Anderson
                              UNITED STATES MAGISTRATE JUDGE